**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| CHRISTA WORTHY, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. CJC-24-0357 |
| WALMART STORE 1715, *et al.*, | * | |
| Defendants. | * | |

**MEMORANDUM OPINION**

This is a negligence action in which Plaintiff Christa Worthy alleges she was injured by a defective automatic door at a Walmart grocery store. Pending before the Court are four motions for summary judgment filed by Defendants Assa Abloy Entrance Systems US Inc. ("Assa Abloy"), Walmart Store 1715 and Walmart, Inc. (collectively "Walmart"), Allegion Entrance Technologies, LLC ("Allegion"), and City Facilities Management (FL), LLC ("City Facilities"). ECF Nos. 80–83. The Court has considered the parties' briefs, and no hearing is necessary. Loc. R. 105.6. For the reasons discussed below, the Court denies Assa Abloy's Motion, denies Walmart's Motion, and grants Allegion's Motion. The Court shall address City Facilities's Motion in a separate order of today's date.

## RELEVANT FACTUAL BACKGROUND[1]

At the center of this case is an automatic sliding door at a Walmart store in Talbot County, Maryland. ECF No. 95-3 at 3.[2] Walmart, as the owner of the property, contracted Allegion to construct the automatic door, which was installed in 2011. *See* ECF Nos. 82-3 at 1, 5 (describing how Walmart store property is owned by Walmart subsidiary); ECF No. 81-2 at 4 (discussing installation of automatic door).

To maintain the automatic doors, including the door at issue here, Walmart contracted City Facilities and Assa Abloy. *See* ECF No. 94-3 at 6 (discussing master services agreement between City Facilities and Walmart); ECF No. 82-3 at 6–17 (master services agreement between Assa Abloy and Walmart). City Facilities acted as a general contractor to resolve maintenance requests at the store. ECF No. 94-3 at 6. Assa Abloy acted as a subcontractor to inspect and repair defective automatic doors at the store pursuant to either a work order sent by City Facilities, or through periodic planned maintenance. *See* ECF No. 82 at 5–6; ECF No. 82-3 at 6; ECF No. 94-3 at 6.

In August 2022, Assa Abloy inspected the automatic doors at the store, including the door at issue here.[3] City Facilities issued a planned maintenance order to Assa Abloy to inspect

---

[1] The facts presented here are undisputed unless otherwise noted and are recited in the light most favorable to Worthy as the non-moving party. *Tekmen v. Reliance Standard Life Ins. Co.*, 55 F.4th 951, 958 (4th Cir. 2022).

[2] Other than citations to deposition transcripts, citations to the parties' filings refer to the page number provided in the CM/ECF filing header, not the PDF pagination.

[3] The parties dispute the identity of the automatic door at issue as it relates to the names given to each door at the store. Worthy contends that the door at issue is the "outer exit door" designated as "wm1715-6." ECF No. 95-2 at 5–6. Allegion and City Facilities, on the other hand, contend that the "outer entry door" designated as "wm1715-5" is the door at issue. ECF No. 81-1 at 2 n.1; ECF No. 83-1 at 2; ECF No. 83-8 at 1. Walmart, in its brief, references a "GC Outer Exit" door designated "[wm]-1715-14," and a door designated with "Serial Number: 'W105813.'" ECF No. 80-3 at 1; ECF No. 80-4 at 7. These apparent disputes do not preclude the Court's review of the

"all automatic doors" in the store. *See* ECF No. 83-6 (discussing planned maintenance order of all automatic doors). On August 8, 10, and 20, Assa Abloy inspected the automatic doors. *See* ECF No. 83-7 (service invoices of August 10 inspections); ECF No. 83-8 (work service report for August 10 inspection); ECF No. 95-4 at 8–9 (describing service orders of August 8 and August 10 inspections). At the conclusion of these inspections, the automatic doors were reported to be functional. *See* ECF No. 83-7; ECF No. 83-8; ECF No. 95-4 at 8–9.

On September 30, 2022, Worthy visited the store to buy something. *See* ECF No. 82-2 at 12:21–13:3. She attempted to enter the store by walking through the automatic door at issue. ECF No. 82-2 at 14:10–16:13; ECF No. 95-3 at 18 (store video depicting incident). As Worthy entered the threshold of the automatic door, the door appears to close, hit Worthy's leg, and cause her to fall. ECF No. 95-3 at 18.

In response to this incident, On October 11, 2022, City Facilities sent a service call to Assa Abloy to inspect the automatic door. ECF No. 82-3 at 3; ECF No. 95-5 at 1 (purchase order reporting "[g]rocery exit door closing too soon. Closed on customer"). By October 13, Assa Abloy had inspected the door and reported that there was a "problem[]" with the "approach sensor" used to detect objects nearing the door such that the door did not meet industry standards for "presence pattern" detection. *See* ECF No. 95-6 at 1. As a result, Assa Abloy recommended installing additional beams on the automatic door. ECF No. 95-6 at 1.

---

motions, however. For purposes of resolving the pending motions, it is enough that the parties do not dispute that Assa Abloy conducted maintenance of all automatic doors in August 2022, *see* ECF No. 83-6, and, in conducting that maintenance, reported that the sensors for the automatic doors, including the door at issue, whatever it is designated, were functional.

## RELEVANT PROCEDURAL HISTORY

On November 8, 2023, Worthy filed this suit, alleging negligence against Walmart, City Facilities, and an unnamed "Door Manufacturer Company" in the Circuit Court for Talbot County. ECF No. 2.

On February 5, 2024, Walmart removed the case to this Court. ECF No. 1. Following removal, the parties present in the original Complaint asserted various claims against each other and additional organizations.

Walmart filed a crossclaim against City Facilities for contribution and indemnification. ECF No. 7. City Facilities filed a crossclaim against Walmart, also asserting contribution and indemnification. ECF No. 10.

Walmart then filed a third-party complaint, adding Assa Abloy as a party and asserting claims against it for contribution and indemnification. ECF No. 26. Worthy filed an Amended Complaint, which added a claim for negligence against Assa Abloy. ECF No. 36.

Assa Abloy filed its own third-party complaint, adding Allegion as a party and asserting contribution and indemnification claims. ECF No. 43. Allegion filed a counterclaim against Assa Abloy, also asserting contribution and indemnification. ECF No. 53.

Allegion filed a crossclaim against City Facilities and Walmart for contribution and indemnification. ECF No. 54.[4] Allegion then filed an amended counterclaim against Assa Abloy and counterclaim against Walmart and City Facilities, again asserting contribution and indemnification claims against each party. ECF No. 56.[5]

[4] In that same filing, Allegion also filed a counterclaim against Assa Abloy that was identical to the counterclaim it previously filed. *Compare* ECF No. 54, *with* ECF No. 53.

[5] Allegion then appears to have filed a counterclaim and crossclaim identical to its previous one. *Compare* ECF No. 56, *with* ECF No. 57.

Worthy filed a Second Amended Complaint that added a negligence claim against Allegion. ECF No. 59.

On March 31, 2026, Assa Abloy, Walmart, Allegion, and City Facilities moved for summary judgment against Worthy. ECF Nos. 80–83. Allegion also moved for summary judgment against Assa Abloy's claims against it. ECF No. 81. Worthy responded to each Motion on May 1, 2026. ECF Nos. 92–95. Assa Abloy did not respond to Allegion's Motion. None of the parties filed a reply.

## SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In other words, summary judgment is appropriate when the evidence 'is so one-sided that one party must prevail as a matter of law.'" *Tekmen v. Reliance Standard Life Ins. Co.*, 55 F.4th 951, 959 (4th Cir. 2022) (citation omitted). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (citation omitted). A genuine dispute over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, to demonstrate a genuine dispute of material fact, the nonmoving party must present sufficient evidence for a reasonable jury to rule in their favor on each essential element of their claim. *See id.*

## DISCUSSION

In her Second Amended Complaint, Worthy alleges that the Defendants were negligent under the doctrine of premises liability. ECF No. 59. In particular, Worthy contends that the

automatic door was a defective, dangerous condition, that Defendants knew or should have known of the defect, that the Defendants failed to warn her of the defect, and that, as a result, Worthy was injured. ECF No. 59. Defendants Assa Abloy, Walmart, and Allegion argue that they are entitled to judgment because they did not breach the duty owed to her. ECF Nos. 80–82. Allegion separately argues that it is entitled to judgment against Assa Abloy's contribution and indemnification claims. ECF No. 81.

Under Maryland law, a plaintiff asserting a claim for negligence must prove that the defendant owed plaintiff a duty; that the defendant breached its duty; that the plaintiff suffered an injury; and that the plaintiff's injury was proximately caused by the defendant's breach. *Duncan-Bogley v. United States*, 356 F. Supp. 3d 529, 534 (D. Md. 2018).

In a premises liability case like this one, a landowner and contractors of the landowner owe identical duties to individuals entering the property. "[T]he duty of care owed by an owner or occupier of a premises is a function of his legal relationship to the person entering on the premises." *Purviance v. Michaels Stores, Inc.*, Civil Action No. PX-23-1665, 2025 WL 696555, at *2 (D. Md. Mar. 4, 2025) (citation omitted). "As agents of the landowner, contractors owe the same duty to those who come upon the realty" as the landowner. *Casper v. Charles F. Smith & Son, Inc.*, 71 Md. App. 445, 457 (1987), *aff'd*, 316 Md. 573 (1989). A person "invited or permitted to enter another's property for purposes related to the landowner's business" is considered an invitee, to which the landowner (and by extension, a contractor) owes the "highest duty." *Tennant v. Shoppers Food Warehouse Md. Corp.*, 115 Md. App. 381, 388 (1997) (citation omitted).

A party breaches their duty to an invitee based on injuries sustained by a condition on the owner's property if: (A) an unreasonably dangerous condition exists on the property; (B) the

condition is not an open and obvious danger to an invitee; (C) the property owner has notice of the unreasonably dangerous condition; and (D) the property owner fails to exercise reasonable care to protect the invitee against the danger. *Giant of Maryland, LLC v. Webb*, 249 Md. App. 545, 562, *aff'd*, 477 Md. 121 (2021).

With these principles of premises liability in mind, the Court addresses Assa Abloy's, Walmart's, and Allegion's Motions in turn.

## I. Assa Abloy's Motion is Denied.

Assa Abloy argues that it is entitled to judgment on Worthy's negligence claim because there is no genuine dispute that it did not breach any duty owed to Worthy. Specifically, Assa Abloy contends that the automatic door at issue cannot be considered an unreasonably dangerous condition. ECF No. 82 at 10. Additionally, Assa Abloy contends that the automatic door presented an open and obvious risk. ECF No. 82 at 10. Finally, Assa Abloy argues that it did not have notice of the allegedly dangerous condition. ECF No. 82 at 8–10. The Court addresses each in turn.

### A. Assa Abloy owed a duty to Worthy as an invitee.

Assa Abloy suggests that, because it "was not the owner or possessor of the premises where [Worthy] fell," it did not owe Worthy a duty under premises liability law. ECF No. 82 at 9. This is incorrect. As discussed above, "contractors owe the same duty to those who come upon the realty" as the landowner. *Casper*, 71 Md. App. at 457. Thus, to determine the duty of care that Assa Abloy owed Worthy, the Court first analyzes the duty of care that Walmart owed Worthy.

Worthy was a business invitee at the time of the incident. An invitee is defined as a person "invited or permitted to enter another's property for purposes related to the

landowner's business." *Tennant*, 115 Md. App. at 388. Worthy was visiting Walmart's property to buy merchandise from the store, and thus Worthy's purpose for visiting the property was connected to Walmart's business. *See* ECF No. 82-2 at 1. As a result, Walmart owes Worthy a duty as an invitee. And by extension, Assa Abloy, as a contractor of Walmart, owes Worthy that same duty. Assa Abloy must therefore exercise "reasonable and ordinary care to keep [the] premises safe for [Worthy] and to protect [Worthy] from injury caused by an unreasonable risk which [Worthy], by exercising ordinary care for [her] own safety, [would] not discover." *Casper*, 316 Md. at 582.

### B. There is a genuine dispute of material fact as to whether the automatic door was an unreasonably dangerous condition.

Assa Abloy contends that the automatic door was not an unreasonably dangerous condition. ECF No. 82 at 10. An unreasonably dangerous condition is one "that will not be discovered by [an] invitee[] exercising ordinary care for their own safety." *Schaefer v. United States*, Civil Action No. PX-15-2690, 2017 WL 2506174, at *2 (D. Md. June 9, 2017) (citing *Leatherwood Motor Coach Tours Corp. v. Nathan*, 84 Md. App. 370, 381 (1990)). Thus, whether a condition is unreasonably dangerous is based on two factors: its ability to cause harm and its discoverability.

There is no dispute between the parties that the automatic door itself caused the harm. *See* ECF No. 82 at 4 (Assa Abloy stating Worthy was "caused to fall when she was struck by an automatic door" (citing ECF No. 82-2 at 16:6–11)); ECF No. 95-2 (Worthy discussing "the door that was involved in her accident"). Thus, the remaining issue is whether the danger could be discovered by exercising reasonable care.

There is a genuine dispute as to whether a person exercising reasonable care in Worthy's position could have discovered the danger of the automatic door. On the one hand, some of

Worthy's testimony suggests that she understood the likelihood of the automatic door closing on her such that she could have avoided it. *See* ECF No. 82-2 at 44:10–13 ("Q. You knew if you were standing right next to the open door, it would automatically close[?] A. Right."). On the other hand, although Worthy may have understood that the ordinary operation of automatic doors is such that they close when one is in close proximity to them, the evidence suggests that the danger of the doors was multifaceted. The record suggests that, not only did the door incorrectly close, but it did so at a rapid rate. Indeed, Worthy's expert opined that, based on surveillance video, the automatic door closed after remaining open for 0.8 seconds, which is about half as long as industry standards require. ECF No. 95-3 at 20. Further, Worthy's testimony indicates that she did not perceive anything that would have indicated that the door closed rapidly. *See* ECF No. 82-2 at 15:1–8 (suggesting that Worthy could neither see nor hear anything unusual about the automatic doors). Based on these facts, a reasonable jury could conclude that the danger from the automatic doors could not have been discovered even if Worthy exercised reasonable care.

Assa Abloy's argument that Worthy cannot establish liability because she did not provide an expert to opine that the automatic door was an unreasonably dangerous condition is unpersuasive. Worthy was not required to provide an expert to make such a determination, as courts often find a genuine dispute of fact exists regarding whether a condition was unreasonably dangerous without the plaintiff providing an expert. *Frostbutter v. Bob Evans Farms, Inc.*, Civil Action No. CBD-12-2388, 2013 WL 4026985, at *5 (D. Md. Aug. 6, 2013) (finding a genuine dispute of fact as to whether a curtain on a bathroom floor was an unreasonably dangerous condition); *Abell v. BVF Skylark, Ltd. P'ship*, No. CIV. CCB-11-2425, 2012 WL 2675281, at *2

(D. Md. July 5, 2012) (same for alleged ice in a parking lot). Accordingly, the Court rejects Assa Abloy's argument.

Because a reasonable jury could find that the risk from the automatic doors was both dangerous and undiscoverable, there is a genuine dispute as to whether the automatic doors were an unreasonably dangerous condition.

**C. There is a genuine dispute of material fact as to whether the automatic door was an open and obvious danger.**

Assa Abloy next argues that the automatic door was an open and obvious danger such that it cannot be held liable for Worthy's injuries. ECF No. 82 at 10. An invitee has "a duty to exercise due care for [their] … own safety" on the property on which they are invited such that the property owner "has no duty to warn an invitee of an open, obvious, and present danger." *Six Flags Am., L.P. v. Gonzalez-Perdomo*, 248 Md. App. 569, 582 (2020) (citation omitted). "Whether a defect is open and obvious usually must be reserved for the trier of fact . . . However, 'where it is clear that any [reasonable] person [in plaintiff's position] must have understood the danger, the issue may be decided by the court.'" *Schaefer*, 2017 WL 2506174, at *3 (quoting *C & M Builders, LLC v. Strub*, 420 Md. 268, 299 (Md. 2011)). Thus, the question is whether any reasonable person in Worthy's circumstances could have understood the danger posed by the automatic doors.

It is not the case that any reasonable person could have understood the danger presented by the automatic doors for two reasons. First, as discussed above, there are facts that suggest that Worthy could not have discovered the risk posed by the rapidly closing automatic door. *See supra* Section I.B. As a result, a reasonable person may not have understood the danger posed by the automatic doors.

Second, courts generally find that an automatic door that unexpectedly closes on an invitee is not an open and obvious danger. *Jacoby v. Wal-Mart Stores, Inc.*, No. 3:09-CV-903, 2010 WL 11677670, at *7 (M.D. Pa. Mar. 23, 2010) ("[W]e cannot say as a matter of law … that reasonable minds could not differ as to whether an automatic door closing on a person passing through the door … was an 'obvious' danger."); *Smith v. Frederick C. Smith Clinic*, 939 N.E.2d 192, 200 (Ohio Ct. App. 2010) (reaching same conclusion because "common experience with these doors does not suggest that they are likely to close on a person. To the contrary, most expect that these doors are equipped with safety mechanisms to prevent the door from closing on a person, to prevent injuries from occurring."); *Mann v. Tractor Supply Co.*, No. 2:08-CV-569, 2010 WL 1856312, at *4 (S.D. Ohio May 10, 2010) (reaching same conclusion because "[c]learly, if the door was defective and the defect or breakdown in normal operation caused plaintiff's injuries, the open and obvious doctrine is not an available defense" (quoting *Hoganson v. Menard, Inc.*, No. 2:04–cv–299, 2007 WL 4395534, at *3 (W.D. Mich. Dec.12, 2007))). *But see Paschke v. Hobby Lobby Stores, Inc.*, No. 2-18-0578, 2019 IL App (2d) 180578-U, at *1, *6 (Ill. App. Ct. Feb. 1, 2019) (finding automatic door's failure to *open*, rather than failure to *stay open*, was open and obvious because a reasonable person could perceive "the width of the opening of the doors"); *Brown v. Pet Supplies Plus*, No. 98 CA 9, 1999 WL 689206, at *1–2 (Ohio Ct. App. Aug. 26, 1999) (finding danger of *functioning* automatic door open and obvious when plaintiff perceived the door and "bent her head down into the door's path to pick up a box"); *Mendez v. United States*, No. 4:21-CV-03931-RBH, 2023 WL 7181741, at *4 (D.S.C. July 12, 2023) ("Whether or not an automatic door shall be considered an open and obvious danger remains uncertain."). The Court finds these cases persuasive given that they are

analogous to the circumstances of the instant case: a plaintiff who was injured by an unexpected condition from a closing, automatic door.

For these reasons, a reasonable person in Worthy's circumstances may not have understood the danger posed by the automatic doors. As a result, a genuine dispute of fact exists as to whether the danger from the automatic door was open and obvious.

**D. There is a genuine dispute of material fact as to whether Assa Abloy had notice of the defect in the automatic door.**

Finally, Assa Abloy argues that it did not receive the notice required for Worthy to hold it liable for her alleged harms. ECF No. 82 at 10. To establish notice under premises liability law, a plaintiff must prove two conditions: (1) that the defendant had the requisite knowledge of the dangerous condition at issue; and (2) that the defendant had sufficient time to prevent the condition from harming the plaintiff. *See Moore v. CVS Pharmacy Inc.*, 270 Md. App. 123, 146–47 (2026). Under the first condition, a plaintiff can demonstrate that the defendant had the requisite knowledge by showing that defendant "created the dangerous condition or had actual or constructive knowledge of its existence prior to the invitee's injury." *Id.* at 146 (citation omitted). Thus, a plaintiff establishes notice by proving that the defendant created, knew, or reasonably should have known of the dangerous condition and that the defendant had sufficient time to prevent harm from the condition.

Here, there is a genuine dispute as to whether Assa Abloy had notice of the alleged defect from the automatic door.

As Assa Abloy points out, there is evidence suggesting that it could not have had the requisite notice of the alleged dangerous condition until after Worthy was injured. First, Worthy testified that she visited the Walmart store at least three times per week prior to the incident and agreed that the automatic doors "operated ... as expected on all prior occasions." ECF No. 82-2 at

12:15–20, 43:5–8. Second, Worthy's daughter, LaToya Smith, testified that she, too, visited the Walmart store prior to the incident and did not observe the automatic doors functioning unusually. ECF No. 82-1 at 29:4–14. Finally, Assa Abloy contends that, following its inspections of the automatic door in August 2022, it did not have any knowledge of an alleged defect in the automatic doors until after the incident when it received a service call from Walmart instructing it to assess and repair the doors. ECF No. 82 at 10; ECF No. 82-3 at 3–4. These facts indicate that Assa Abloy lacked both the knowledge and the ability to timely fix the defect to establish it had notice of the defective automatic door.

On the other hand, Worthy supplies evidence from her expert, engineer Samuel J. Taylor, indicating that Assa Abloy had constructive knowledge (i.e., that it should have known) of the defect in the automatic doors that led to Worthy's injuries and that Assa Abloy had time to fix the defect. This evidence creates a dispute of fact. As part of his expert report and affidavit, Taylor recounted the October 13, 2022, work order memorializing the repairs made by an Assa Abloy technician on the automatic doors following Worthy's injury. ECF No. 95-6; ECF No. 95-8 at 2. In particular, Taylor noted that the Assa Abloy technician reported in the work order that the "door presence pattern [was] too small" for the width of the automatic doors and that the automatic doors were "not meeting the [American National Standards Institute] standards for presence pattern width." ECF No. 95-6; ECF No. 95-8 at 2–3.[6]

---

[6] In his affidavit, Taylor explained that a presence detection zone sensor:

> detects the presence of a person or object within the threshold of the door. When the sensor monitoring the presence detection zone senses the presence of a person or object in the threshold, it sends a signal that holds the doors open …. The presence detection zone sensor is supposed to monitor the entire threshold – i.e., the space along the entire width between the doors when the doors are fully open. Further, the presence detection zone sensor senses obstructions just before and just

Based on these defects, Taylor formed several opinions: that the defects "were not likely to have been caused by a failure or breakage of the sensor or other equipment"; that "the deficiencies existed because the sensor settings on the threshold detection … zones were improper"; that Assa Abloy "should have detected the presence detection zone sensor's previous inability to monitor the entire threshold, not only during initial installation, but also *on all subsequent service or repair calls*"; and that on Assa Abloy's August 10, 2022, inspection of the automatic doors, Assa Abloy "*should have found the deficiencies with respect to the door's presence detection zone sensor at that time and then promptly corrected them*." ECF No. 95-8 at 3–4 (emphasis added). Thus, Taylor opined that the defect that appears to have caused Worthy's injury occurred because an improper setting on the automatic doors' sensors was selected, and Assa Abloy should have known of this error by August 10, 2022, fifty-one days before Worthy's injury.

Although Assa Abloy has presented evidence indicating it had no notice of the defective automatic doors, based on the opinions of Worthy's expert, Samuel Taylor, a reasonable jury could find that Assa Abloy had constructive knowledge on August 10, 2022, that the automatic doors' sensors used improper settings and that the fifty-one days between the August 10 inspection and Worthy's injury was sufficient time for Assa Abloy to correct the settings. As a result, there is a genuine dispute of material fact as to whether Assa Abloy had notice that the automatic doors were an unreasonably dangerous condition.

---

> after the threshold …. That is because pedestrians could potentially approach the doors at an acute angle … i.e., walking along the wall.

ECF No. 95-8 at 3.

Because there is a genuine dispute of material fact as to whether the automatic doors were an unreasonably dangerous condition, whether they presented an open and obvious risk, and whether Assa Abloy had notice of the dangerous condition, Assa Abloy is not entitled to summary judgment. The Court therefore denies Assa Abloy's Motion.

**II. Walmart's Motion is Denied.**

Walmart contends that it is entitled to summary judgment because, even if it owes Worthy a duty as an invitee, there is no genuine dispute that Walmart did not have notice of the defect in the automatic doors. ECF No. 80-1 at 3. Worthy contends that whether Walmart had notice of the danger posed by the automatic doors is irrelevant because Walmart owed a non-delegable duty to Worthy, and thus there is a genuine dispute of fact as to whether Walmart is vicariously liable to Worthy. ECF No. 92-2 at 3–4. The Court agrees with Worthy. As discussed above, Worthy is an invitee. *See supra* Section I.A. Additionally, the duty Walmart owes to Worthy is non-delegable such that there is a genuine dispute as to whether Walmart is vicariously liable for Assa Abloy's conduct.

A non-delegable duty is a legal duty in which a party is "free to delegate the duty of *performance* to another, but [they] cannot thereby avoid or delegate the *risk* of non-performance of the duty." *Rowley v. Mayor & City Council of Baltimore*, 305 Md. 456, 466 (1986) (emphasis added). A non-delegable duty often arises in the context of an employer-independent contractor relationship, and such a duty is an exception to the general rule that an employer is not liable for the acts of an independent contractor. *See id.* If an independent contractor commits a tort against a party to which the employer owed a non-delegable duty, the employer is vicariously liable for the acts of the independent contractor. *See id.*; Restatement (Second) of Torts, Introductory Note to Chapter 15, Topic 2 (describing how non-delegable duty rules "are rules of vicarious liability,

making the employer liable for the negligence of the independent contractor, irrespective of whether the employer has himself been at fault.”). The justification for imposing vicarious liability on employers of independent contractors “is primarily a policy decision, the purpose being the protection of the public generally.” *Parker v. Neighborhood Theatres, Inc.*, 76 Md. App. 590, 596 (1988).

Landowners, in particular, owe non-delegable duties to invitees on their property. *Rowley*, 305 Md. at 466. As relevant here, landowners owe a non-delegable duty to repair structures on the property:

> A possessor of land who entrusts to an independent contractor construction, repair, or other work on the land, or on a building or other structure upon it, is subject to the same liability as though he had retained the work in his own hands to others on or outside of the land for physical harm caused to them by the unsafe condition of the structure
>
> > (a) while the possessor has retained possession of the land during the progress of the work, or
> > (b) after he has resumed possession of the land upon its completion.

Restatement (Second) of Torts § 422; *Rowley*, 305 Md. at 466 (citing § 422 with approval). This non-delegable duty applies when the landowner employs an independent contractor to inspect the premises and an invitee is injured by a dangerous condition that the independent contractor would have discovered had they exercised reasonable care in conducting the inspection. *See* Restatement (Second) of Torts § 422 cmt. f; *see also id.* at cmt. d (“If the repairs are so made that … an unreasonably dangerous condition previously existing is not removed, the employer is liable ….”). Thus, based on this non-delegable duty, a landowner is vicariously liable to an invitee if an independent contractor is liable to that same invitee under premises liability law, including when the independent contractor negligently inspects the premises.

Here, Walmart owes a non-delegable duty to Worthy. As the landowner, Walmart contracted with Assa Abloy for the inspection and repair of the automatic doors on its property. ECF No. 82-3 at 6. While Walmart entered into a contractual relationship with Assa Abloy for the *performance* of inspecting and repairing the automatic doors, the *legal duty* for Assa Abloy's failure to perform remained with Walmart.

Accordingly, Walmart's argument that is had no notice of the defect in the automatic door is irrelevant because, as a party who owed a non-delegable duty, Walmart is liable "for the negligence of [Assa Abloy], irrespective of whether the employer has [it]self been at fault." Restatement (Second) of Torts, Introductory Note to Chapter 15, Topic 2.

Because Walmart owed a non-delegable duty to Worthy to inspect and repair the premises, there is a genuine dispute of fact as to whether Walmart is vicariously liable for Assa Abloy's conduct. This is because, as discussed above, a reasonable jury could find Assa Abloy liable for its failure to discover the alleged defect in the automatic doors that led to Worthy's injury. *See supra* Section I.D. Should a jury find Assa Abloy liable for such conduct, the jury would necessarily find Walmart vicariously liable for the same. As a result, a genuine dispute of fact exists as to whether Walmart is vicariously liable for Assa Abloy's alleged negligence. The Court therefore denies Walmart's Motion.

## III. Allegion's Motion is Granted.

Allegion, as the installer of the automatic door at issue, argues that it is entitled to judgment against Worthy's negligence claim and Assa Abloy's contribution and indemnification claims. As to Worthy's negligence claim, Allegion argues that there is no genuine dispute that it is not liable (1) under a theory of product liability and (2) under a theory of failure to operate or maintain the automatic door. ECF No. 81-1 at 5–10. As to Assa Abloy's indemnification claim,

Allegion argues that neither an express nor implied contract existed that could subject it to liability and that, because Assa Abloy was directly negligent for Worthy's injuries, it is precluded from seeking indemnification from Allegion. ECF No. 81-1 at 11–14. Finally, Allegion argues that Assa Abloy cannot seek contribution against Allegion because Assa Abloy has not provided any evidence to demonstrate that Allegion and Assa Abloy are jointly liable under Maryland's Uniform Joint Tort-Feasors Act. ECF No. 81-1 at 14–15.

Because Worthy and Assa Abloy forfeited their claims against Allegion, there is no dispute of material fact that Allegion is not liable for the above claims, and it is entitled to judgment as a matter of law. Worthy explicitly forfeited her negligence claim against Allegion by filing a response in which she stated she "does not oppose Allegion's [M]otion" against her negligence claim. ECF No. 93. For its part, Assa Abloy implicitly forfeited its contribution and indemnification claims against Allegion by abandoning them. "A plaintiff who fails to respond to an argument for summary judgment is deemed to have abandoned the claim." *Neal v. Caplan*, Civil Action No. BAH-22-1919, 2025 WL 608191, at *10 (D. Md. Feb. 25, 2025) (quoting *Rodgers v. Eagle All.*, 586 F. Supp. 3d 398, 448–49 (D. Md. 2022)); *see also Grant-Fletcher v. McMullen & Drury, P.A.*, 964 F. Supp. 2d 514, 525 (D. Md. 2013) (granting summary judgment as to Count IV in part because plaintiff "appears to have abandoned this argument by not opposing [defendant's] Motion for Summary Judgment on the issue"). Here, Assa Abloy did not respond to Allegion's Motion, and the deadline for it to do so has long passed. As a result, Assa Abloy has abandoned its contribution and indemnification claims against Allegion. Because Worthy declined to oppose Allegion's Motion and Assa Abloy abandoned its claims against Allegion, the Court grants summary judgment in favor of Allegion and against Worthy and Assa Abloy. As Allegion points out, this outcome moots Allegion's indemnification and contribution

counterclaim against Assa Abloy and its identical crossclaims against Walmart and City Facilities. ECF No. 81-1 at 2.

## CONCLUSION

For the reasons stated above, the Court DENIES Assa Abloy's Motion for Summary Judgment. The Court DENIES Walmart's Motion for Summary Judgment. The Court GRANTS Allegion's Motion for Summary Judgment.

Date: September 17, 2026

/s/
Chelsea J. Crawford
United States Magistrate Judge